Mr. Justice CATRON
 

 delivered the opinion of the court.
 

 Hood and nine others, including the defendants, made a note of hand in Ohio, dated October 24th, 1849, for fifteen thousand dollars, payable to Woodward & Dusenberry thirty days after date, at their office in New T ork.
 

 For himself, and as the agent of the other makers, Hood applied to the payees, Woodward & Dusenberry, for an advance' of money on the note, for the benefit of all the makers jointly. Woodward & Dusenberry agreed with Hood to advance, on a pledge of the note, as security, six thousand dollars; and Hood requested them to give to him their certificate of deposit for that sum, to the credit of John Ritchey, cashier; which was done, and Ritchey, as payee, endorsed the paper to Hood. It was-subsequently presented for payment by
 
 bona fide
 
 holders, and
 
 *274
 
 Woodward
 
 k
 
 Dusenberry paid the full amount thereof in cash.
 

 At the time the certificate of deposit was given, and endorsed by Ritchey, and the fifteen thousand dollar note deliv ered to Woodward & Dusenberry, they agreed with Hood that if he should return to them the certificate of deposit, they would then surrender to him the note. The money advanced not having been refunded, except in part, this' suit was brought in assumpsit to recover the balance.
 

 In their answer to a bill of discovery, Woodward & Dusenberry admit they were advised by Hood that the $15,000 note “had been executed by himself and his friends, the other signers thereof, for the purpose of borrowing money thereon for the joint benefit of all of them;” also, “that at the. time said note was delivered to the said Woodward & Dusenberry, .they issued and delivered to said Hood, for the joint use and benefit of all the parties signing said not.e, as the respondent understood it, the certificate of deposit of said ■ Woodward
 
 k
 
 Dusenberry for the sum of six thousand dollars, by request of said Hood, made payable to the order of John Ritchey, Esq., cashier at the office of said Woodward
 
 k
 
 Dusenberry in New York city,, on the return of said certificate, and which said certificate was received by said Hood on behalf of himself and his associates as so much cash.”
 

 Upon this and other evidence in the case, the counsel for the defendants (the now plaintiffs in error) asked the court to instruct the jury, that if they should find, from the evidence, that Hood was only authorized to use the note to borrow money thereon for the joint benefit of himself and the other makers thereof, and that at the time the plaintiffs, Woodward
 
 k
 
 Dusenberry, received the same from Hood, and delivéred to him the certificate of deposit, they had notice that Hood so held the note for the said purpose, then the plaintiffs were not entitled to recover of the defendants; which instruction the court refused to give, but did instruct the jury that the certificate of deposit so delivered to Hood was in effect money, and came within the authority to borrow money. Exceptions
 
 *275
 
 ivere taken to the refusal to give the charge asked for, and to, the charge as given.
 

 They claimed that the- court erred, insisting that a certificate of deposit is in no sense cash or money; it is simply'an acknowledgment of a debt, with a promise of payment; that the transaction between Hood and Woodward & Dusenberry was simply the exchange of one form of negotiable security for another; and that this was clearly a breach of trust, and a perersion of the authority to use the note for the loan of money. And they refer to the following authorities in support of this position: Thorold
 
 v.
 
 Smith, 11 Modern, 71, 87; Bartlett
 
 v.
 
 Pintland, 10 Barn. and Cress., 758; Atkins
 
 v.
 
 Owen, 4 Ad. and Ellis, 819; Nightingale
 
 v.
 
 Devisone, 5 Burr., 2589. Here, Woodward & Dusenberry had six thousand dollars in bank, or a broker’s office, and the cashier gave a certificate to that efi feet, and promised to pay the money to the holder of the certificate who should present it. Hood could have taken out the money the next hour.
 

 ..A certificate of this kind was a means of advance, that in all ' probability suited these borrowers, who resided in Ohio, quite as well as the gold or silver would have done. It was to the same effect as. if Hood had received the money, and deposited the specie, subject to his own check on the cashier of the bank: This certificate was actually paid in cash to the agent of the parties to the' note, for such, the
 
 bona fide
 
 holder was. '
 

 To maintain, as we are asked in effect to do, that a check on a bank, payable at sight, to order, and. endorsed in blank, and which an agent, to
 
 raise-money
 
 on negotiable paper, took as money, and which check was presently paid to a
 
 bona fide
 
 holder by the cashier of the bank, was not money ; that the note or bill purchased was. not sold for money; that no title passed to the purchaser; and that the principal was not bound by the. contract of the agent, would be a startling doctrine in the marts of commerce of this country, where money is usually transferred by bank checks, and may be fairly presumed to change hands on the check being given.
 

 We order that the judgment be affirmed.