Jerry JENNINGS as Executor of the
Estate of Delbert L. Jennings,
Appellant (Plaintiff Below),

v.

James M. BACKMEYER, Appellee
(Defendant Below).

No. 81A01–9011–CV–468.

Court of Appeals of Indiana,
First District.

April 10, 1991.

Douglas Norris, Cambridge City, for appellant.

James M. Backmeyer, Richmond, pro se.

ROBERTSON, Judge.

The Estate of Delbert L. Jennings appeals the judgment against it in its action against James M. Backmeyer, an attorney, to recover unearned legal fees paid by the decedent, Delbert L. Jennings, to Backmeyer under a "nonrefundable" fixed fee contract for legal services. The Estate raises three issues. Because one mandates reversal, we address it only. This issue may be restated as follows:

> Whether a fee for legal services paid in advance under a "nonrefundable" fixed fee contract is truly nonrefundable under the Model Rules of Professional Conduct when the client dies before the attorney earns the entire fee under the contract?

### FACTS

In 1986, 79 year-old Delbert L. Jennings was in the mobile home business. He had taken an option to purchase a piece of real estate from a bank that had taken title by a deed in lieu of foreclosure. The bank had neglected to record its deed so the real estate record in the Recorder's Office still indicated that the former owners, Gilford and Martha Snapp, owned the land. Jennings' option was conditioned upon his ability to obtain a zoning variance enabling him to use the property for a mobile home park.

Jennings filed a verified petition with the County Zoning Board requesting the variance. He forged the signatures of the Snapps and procured a notarization of the Snapps' forged signatures on the petition.

The Snapps found out what Jennings had done and on September 15, 1986 made a complaint to the Sheriff's office. The case

was forwarded to the Prosecutor's office for review of possible criminal charges.

Jennings asked attorney Backmeyer to defend him against the possible criminal charges. On September 24, 1986, Jennings and Backmeyer entered into a fixed fee "nonrefundable" contract for legal services. The agreement provided that Jennings pay Backmeyer an initial retainer of $5,000.00 and an additional $5,000.00 thirty days later. The agreement provided further that if the matter went to trial, an additional $5,000.00 payment would be required.

Jennings paid Backmeyer the initial installment of $5,000.00 on September 24, 1986 and the second installment of $5,000.00 on November 3, 1986. Jennings died of natural causes on November 30, 1986. Criminal charges were never filed against Jennings.

Jennings' estate requested an itemized bill of Backmeyer's services and a refund of unearned fees. The matter could not be amicably resolved and this litigation ensued. At trial, the reasonable value of Backmeyer's services was hotly contested. Backmeyer's itemization of services listed approximately forty (40) hours of work. Ten (10) hours were attributable to conferences with Jennings. Fifteen (15) hours were devoted to legal research. Two (2) hours were devoted to "[c]ontact local radio station to verified if in fact information on radio for zoning hearing." Forty-five (45) minutes were devoted to a conference with the Prosecuting Attorney, Gerald Surface, with regard to Jennings' case. Several phone calls to and from Surface and his office—each billed at ten (10) minutes—were recorded on the itemization of services. Surface testified at a deposition taken in this matter that he did not specifically remember Jennings' case or ever discussing the matter with Backmeyer. He testified further that it was unlikely that he discussed Jennings' case with Backmeyer for forty-five (45) minutes because the case had been assigned to his deputy prosecutor and the normal office practice would have been for the deputy to discuss the case with the defense attorney.

It would appear from all accounts—including Backmeyer's—that the threat of a criminal prosecution against Jennings was never serious. The deputy prosecutor to whom Jennings' case was assigned testified at the trial in this matter that he had no recollection of Jennings' case and did not remember any discussions with Backmeyer about the case. He did review the file in preparation for the present hearing and testified hypothetically that the matter never warranted the filing of charges.

In any event, it would appear to be uncontested that—even if the itemization of Backmeyer's services were to be taken at its face and billed at the highest rate available to criminal defense attorneys in the area, $120.00 per hour—the value of Backmeyer's services would not amount to even one-half of the $10,000.00 that Jennings had paid.

Backmeyer has consistently maintained that the "constant harassment I put on the Wayne County Prosecutor's office," resulted in the prosecutor's decision not to file charges against Jennings and that no refund was available under the "nonrefundable" agreement for legal services.

The trial court held that Backmeyer was entitled to keep the entire advanced fee of $10,000.00.

## DECISION

We believe this case is easily resolved. Even if the trial court were to accept Backmeyer's assertion that the prosecutor's decision not to file charges against Jennings was a result of his efforts, we do not believe that Backmeyer had earned the total fee under the agreement. The prosecutor was not bound by any decision not to file criminal charges and could have changed his mind and filed charges against Jennings at any time within the relevant statute of limitations and Jennings' lifetime. If that had happened, Backmeyer would have been required to perform additional services under the agreement to earn his fee. Instead, the threat of a criminal prosecution against Jennings was foreclosed by his death which also marked the end of the attorney/client relationship between Backmeyer and Jennings.

 Ind. Professional Conduct Rule 1.16(d) reads in pertinent part as follows:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... *refunding any advance payment of fee that has not been earned.* (Emphasis added.)

We recently held that when an attorney—employed under a contract for legal services—is discharged by a client, with or without cause, that attorney may not recover damages under the contract but is limited to the recovery of the reasonable value of his or her services rendered before the discharge on the basis of *quantum meruit. Estate of Forrester v. Dawalt* (1990), Ind.App., 562 N.E.2d 1315, *trans. pending.* Our decision was based on the contemporary and regulated status of the attorney-client relationship as governed by the Model Rules of Professional Conduct. *Id.* We believe the present case should be governed by similar considerations.

A New York bar association ethics committee opined that, while nonrefundable fee agreements are not unenforceable as a matter of law nor necessarily violative of public policy, no fee advanced by a client can ever be truly nonrefundable in light of the disciplinary rules which prohibit the collection of an excessive fee and require the refund of any unearned fee. *Nassau County Bar Association Opinion 85–5* (6/18/85) as reported in 43 *ABA/BNA Lawyer's Manual on Professional Conduct* § 45:1204 (2/18/87). This bar association opined further that—based on the model rules—nonrefundable fee agreements are at best illusory and an attorney whose representation of a client has ended is limited to recovering the reasonable value of his or her services under the theory of *quantum meruit* regardless of whether the attorney was employed under a "nonrefundable" fee agreement. *Id.*

Indiana attorneys are governed by the Model Rules of Professional Conduct and not the A.B.A. Model Code of Professional Responsibility as are New York lawyers. Nevertheless, we are impressed with the above New York bar association opinion and are convinced that the Code under which Indiana's attorneys are governed demands the identical result. Our Prof. Cond.R. 1.5(a) mandates that a lawyer's fee be reasonable. Also, as noted above, Prof. Cond.R. 1.16(d) requires the refund of any advance payment of a fee which has not been earned.

We were unable to locate any cases similar to the one at bar. However, we believe the following quote speaks to the present situation:

Where the contract is terminated by the death or disability of the attorney, the client is not ordinarily liable under the contract, but only on a quantum meruit. Upon termination of a retainer by the death of the client, the attorney may recover the reasonable value of the services which he has rendered prior to the client's death.

7A Corpus Juris Secundum, *Attorney & Client* § 292 (1980) at p. 546.

Based on the above, we hold that the "nonrefundable" fixed fee contract for legal services involved in the present case is illusory. Backmeyer did not earn the entire fixed fee under the contract because his performance under the contract was rendered impossible by Jennings' death which occurred before the statute of limitations for the alleged criminal offense had run. Jennings' death marked the end of the Backmeyer/Jennings attorney/client relationship and Backmeyer's ability to earn legal fees under their agreement.

We hold that Backmeyer is entitled only to the reasonable value of his services rendered before Jennings' death under the theory of *quantum meruit* and he must refund to Jennings' estate any unearned portion of the fee Jennings had paid in advance. Therefore, we must reverse and remand to the trial court for proceedings consistent with this opinion.

Judgment reversed.

RATLIFF, C.J., concurs.

MILLER, P.J. concurs in result.